**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

Case No. 24-cv-62318-AHS

FERNANDO SERRATOS, on behalf of
himself and others similarly situated,

     *Plaintiff,*

v.

MYCARECLUB, LLC,

     *Defendant.*

_____/

**DEFENDANT'S UNOPPOSED MOTION TO VACATE CLERK'S DEFAULT**

Comes Now, Defendant MyCareClub, LLC ("MCC" or "Defendant"), by and through undersigned counsel, and pursuant to Rule 55(c) of the Federal Rules of Civil Procedure, hereby moves this Honorable Court for entry of an Order vacating the Clerk's Default entered on February 10, 2025 [DE 10], and in support thereof, states as follows:

1.     On or about December 7, 2024, Plaintiff Fernando Serratos ("Plaintiff") commenced the instant action by filing its complaint (the "Complaint") [DE 1] against Defendant.

2.     On or about January 8, 2025, a copy of the Complaint and summons was served on Defendant's registered agent, thereby, upon information and belief, making MCC's excusable deadline to respond to Plaintiff's Complaint due on or before February 9, 2025.

3.     While Defendant's registered agent forwarded a copy of the Complaint to MCC, due to Defendant's excusable neglect, as more fully detailed by the declaration of Kyle Proctor, MCC's Managing Partner, a copy of which is attached hereto as **Exhibit 1**, and notwithstanding receipt of Plaintiff's Complaint, MCC inadvertently failed to recognize that the Complaint was an

operative legal pleading filed by Plaintiff in this action or that MCC was required to respond to the Complaint within a time certain. *See* Ex. 1 at ¶6.

4.      As a result of MCC's excusable neglect and failure to timely respond to the Complaint, a Clerk's Default was entered on or about February 10, 2025, against MCC for its failure to appear, answer, or otherwise plead to the Complaint within the time required by law (the "Default") [DE 10], a copy of which was provided directly to MCC at its place of business.

5.      Upon receipt of the foregoing notice of Default on or about February 10, 2025, MCC realized for the first time the significance of Plaintiff's Complaint and the need for immediate action. To this point, upon receipt of the Default, MCC took prompt and immediate action to investigate and determine the cause of the breakdown in its reporting systems and procedures that resulted in MCC failing to recognize the pendency of the instant action, in addition to its failure to timely respond to Plaintiff's Complaint prior to receipt of the Default. *See* Ex. 1 at ¶¶ 5-6.

6.      From its due diligence and investigation, MCC confirmed that while a copy of Plaintiff's Complaint was served on MCC's registered agent in Florida, due to excusable neglect and mistake, MCC failed to timely respond to Plaintiff's Complaint in this action due to its reasonably mistaken belief that it had previously responded to and resolved Plaintiff's claims which form the basis for Plaintiff's Complaint relating to MCC's alleged telemarketing activities, prior to the commencement of the instant action or receipt of the Default. *Id*. at ¶ 7.

7.      More specifically, on or about November 11, 2024, MCC received a letter from attorney, Dana J. Oliver, Esq., of the Heidarpour Law Firm, LLC, a Washington D.C. based law firm, sent on behalf of Plaintiff, concerning supposed violations of the Telephone Consumer Protection Act ("TCPA") committed by MCC during November 2024 and demanding production

of certain documents by MCC reflecting Plaintiff's consent to receive telemarketing texts and phone calls from MCC (the "November Demand"), a true and correct copy of which notice is attached hereto as **Exhibit 2**.

8.          Notably, the allegations set forth in the November Demand concerning, in pertinent part: (i) the time period during which MCC allegedly violated the TCPA; (ii) the means and methods underlying such violation; and (iii) the phone number allegedly utilized by MCC to engage in making unsolicited telemarketing calls and sending texts to Plaintiff, are nearly identical to the allegations made by Plaintiff in the Complaint.

9.          Thereafter, on or about November 14, 2024, and as requested by the November Demand, MCC responded to attorney Oliver on behalf of Plaintiff, whereby MCC not only addressed the claims and allegations asserted by Plaintiff against MCC, as more fully described in the November Demand, but MCC also provided attorney Oliver with unrefuted proof: (i) that on the November 8, 2024, date in question, Plaintiff, not MCC, was responsible for initiating the phone call, and selecting the prompt options thereafter, that resulted in Plaintiff speaking with MCC's agent, Terrence Rhymer, regarding available health insurance options for Plaintiff; and (ii) that Plaintiff had provided his express consent and opted-in to receive telemarketing phone calls and texts in connection with his health insurance options and needs (the "November Response"), a true and correct copy of which, with attachments, is attached hereto as **Exhibit** 3.

10.        As MCC had been communicating exclusively with attorney Oliver regarding Plaintiff's alleged TCPA claims against MCC, in connection with responding to the November Demand on or before November 14, 2024, and providing counsel with the supporting documents requested therein, and which refuted and belied Plaintiff's claims regarding MCC's alleged violations of the TCPA in November, 2024, MCC reasonably believed that: (i) attorney Oliver was

the only lawyer representing Plaintiff in connection with his claims against MCC for supposed violations of the TCPA in November, 2024; (ii) MCC had sufficiently responded to the November Demand via its November Response and; (iii) MCC had provided attorney Oliver with sufficient documentation evidencing Plaintiff's consent and opt-in to receive such calls supposedly made by MCC on or about November 8, 2024, that no further action was needed with respect to any claims made by Plaintiff regarding alleged TCPA violations committed by MCC on or about November 8, 2024.

11.     As a result of MCC's mistaken belief that the November Response sent to Plaintiff's counsel sufficiently addressed the concerns and allegations made by Plaintiff against MCC under the November Demand and that the documents attached thereto had resolved any doubt regarding the issue of Plaintiff's consent, due to excusable neglect, MCC inadvertently failed to recognize that: (i) Plaintiff's Complaint was separate and distinct from the November Demand previously received on behalf of Plaintiff just weeks earlier; (ii) that Plaintiff was being represented by a different law firm, entirely separate from attorney Oliver's firm; (iii) that notwithstanding MCC's exclusive communications regarding Plaintiff's TCPA claims with attorney Oliver, Plaintiff had evidently hired new counsel to pursue legal action regarding the same claims previously addressed by and discussed with attorney Oliver on behalf of Plaintiff; and (iv) that Plaintiff had caused the instant legal proceeding to be filed and that MCC was required to file a response with the Court within the time set forth by law to Plaintiff's Complaint.

12.     As a result of such mistaken beliefs, MCC inadvertently failed to either to properly flag or log such Complaint, send a copy of same to counsel, or otherwise calendar a response deadline to same in its document management/ filing system, as is the normal and ordinary practice of MCC upon receipt of legal papers.

13.     However, as a result of MCC's above-described inadvertence, MCC's failure to timely respond to the Complaint, resulting in the entry of the Default, was due to MCC's excusable neglect and not for any willful reason.

14.     The law in the Circuit is clear that, upon a party's showing of good cause, including mistake, inadvertence, surprise, or excusable neglect—such as MCC has demonstrated here—a court may set aside an entry of default.  See F.R.C.P. 55(c) and 60.

15.     Indeed, in instances such as here, when a party has failed to timely file an answer by the appropriate court deadline, the non-moving party does not make a claim to be prejudiced as a result, the delay in responding itself was short and had no apparent impact on the proceeds, or the subject filing was made intentionally or with a lack of good faith, it is not an abuse of discretion by the district court to allow for such late filing.  *See Kirkland v. Guardian Life Ins. Co. of Am.*, 352 F. App'x 293, 297 (11th Cir. 2009).

16.     Moreover, because there is a strong policy of determining cases on their merits, defaults are viewed with disfavor in this District.  *See* e.g., *In re Worldwide Web Sys., Inc.,* 328 F.3d 1291, 1295 (11th Cir. 2003).  "The entry of judgment by default is a drastic remedy and should be resorted to only in extreme situations. It is only appropriate where there has been a clear record of delay or contumacious conduct."  U.*S. v. Varmado,* 342 Fed. Appx. 437, 441 (11th Cir. 2009 (quoting *E.F. Hutton & Co. v. Moffatt,* 460 F.2d 284, 285 (5th Cir. 1972)).

17.     "Excusable neglect" is the standard in several of the Federal Rules of Civil Procedure with regard to the failure to timely file a pleading or perform an action. *Pioneer Inv. Servs. v. Brunswick Assocs.* 507 U.S. 380, 392 (1993).  In *Pioneer,* the Supreme Court held that these factors should be considered by a Court in analyzing a claim of "excusable neglect:" (i) prejudice to the opposing party; (ii) the length of the delay and its potential impact on the

proceedings; (iii) the reason for the delay; and (iv) whether the moving party acted in good faith.

507 U.S. at 395; *see also Advanced Estimating System, Inc. v. Rine*y, 77 F.3d 1322, 1325 (11th

Cir. 1996).

18.     To demonstrate the existence of excusable neglect, a party must establish that: (1)

it had a meritorious defense that might have affected the outcome; (2) granting the motion would

not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply

to the complaint." *In re Worldwide Web Sys. At* 1295*; see also France v. Riviera-Homes for

America Holdings, LLC*, 2009 WL 3242018 at *3-4 (M.D. Fla. October 6, 2009).  Of those factors,

primary importance should be accorded to the prejudice to the non-moving party, if any, and to

the interest of efficient judicial administration.[1]  *See Riney,* 77 F.3d at 1325.

19.     Indeed, in granting a party's motion to vacate a default, courts have found acts

ranging from the advertent calendaring error by an attorney working on the case, to the failure of

a company employee to forward the summons and complaint to the appropriate person within the

company pursuant to established company procedures, to constitute "excusable neglect," and

sufficient to warrant vacating of the subject default against such party,  *See Kirkland v.

The Guardian Life Insurance Company of America,* 352 Fed. Appx. 293, 297 (11th Cir.2009);

*see also France,* 2009 WL 3242018 at *3.  Moreover, a default judgment may be vacated where

the movant shows that the deadline was missed because of a clerical error in failure to

communicate and failure to docket the due date.  *See Cheney v. Anchor Glass Container Corp.,* 71

F.3d 848, 850 (11th Cir. 1996); *see also Riney,* 130 F. 3d 996, 999 (11th Cir. 1997); *Bland v.

---

[1] In support of Defendant's position that prejudice will not result against the non-moving party, Defendant states that on February 19, 2025, Plaintiff's counsel confirmed that they would not oppose Defendant's Motion to Vacate. Further, Plaintiff's counsel confirmed on March 4, 2025, that—although an Order granting Defendant's instant Motion would moot Plaintiff's pending Motion for Discovery—Plaintiff would not oppose an extension by which Defendant was required to reply to the same.

*Viking Fire Protection, Inc.*, 454 So. 2d 763 (Fla. 2d DCA 1984) (excusable neglect was inherent in an employee's misfiling of the summons and complaint); *Associated Med. Inst., Inc. v. Imperatori*, 338 So. 2d 74 (Fla. 3d DCA 1976) (excusable neglect, sufficient to justify setting aside default judgment, was found where the secretary by mistake filed the suit papers in the "terminated case" file instead of the "pending case" file).

20.     Here, the declaration of Kyle Proctor demonstrates that MCC's failure to timely respond to the Complaint was due to its own excusable neglect; namely, its mistaken belief that: (i) the November Response sent to Plaintiff's counsel sufficiently addressed the concerns and allegations made by Plaintiff against MCC under the November Demand; (ii) the documents attached thereto had resolved any doubt regarding the issue of Plaintiff's consent; (iii) MCC's failure to recognize that Plaintiff's Complaint filed in this action was a different filing from the November Demand previously received on behalf of Plaintiff just weeks earlier; (iv) Plaintiff had caused the instant legal proceeding to be filed; and (v) MCC was required to file a response with the Court within the time set forth by law. *See* Ex. 1 at ¶¶ 11-12.

21.     Proctor's declaration further confirms that MCC's failure to timely respond to Plaintiff's Complaint was not intentional or willful, but was due to MCC's mistaken beliefs regarding Plaintiff's filings and representation, that MCC also mistakenly failed to either record such Complaint in its records, contact its outside counsel to represent it in the pending matter, or to properly calendar a response deadline to the Complaint in its document management/filing system, as is the normal and ordinary practice of MCC and that MCC, within ten (10) days of discovering its errors, sought to undue the same.. *Id*. at ¶¶ 12-13, 15.

22.     Lastly, Proctor's declaration makes clear that MCC has meritorious defenses against Plaintiff's claims raised in the Complaint including, without limitation, those defenses

previously described by MCC in its November Response, that Plaintiff had previously provided express written consent and opt-in to receive telemarketing phone calls and texts from 3rd parties such as MCC to discuss Plaintiff's health insurance options and needs, that MCC does not engage in outbound telemarketing, and that MCC's internal records do not reflect that it had initiated the subject calls to Plaintiff as alleged in the Complaint, all of which tend to disprove Plaintiff's claims against MCC. *See Suntrust Bank v. Armsey*, No. 09-80606-CIV, 2010 WL 731802 (S.D. Fla. Feb. 26, 2010) (the movant need not prove likelihood of success but only a hint of a suggestion that the defense has merit).

23.    Accordingly, because MCC has demonstrated that its failure to respond to Plaintiff's Complaint was due to excusable neglect, Defendant has met its burden for this Court to vacate the Default entered against it in this action.

WHEREFORE, for the foregoing reasons, Defendant MyCareClub, LLC, respectfully requests that the Court grant the instant Motion to Vacate Clerk's Default and provide Defendant with 20 days within which to file its response to Plaintiff's Complaint, together with any other relief justified under the circumstances.

Respectfully submitted,

DARROW EVERETT, LLP
Counsel for Defendant
1 SE 3rd Avenue, Suite 2520
Miami, Florida 33131
Tel.: (305) 686-5159 Fax: (305) 686-6159 E-Service:
dhaft@darroweverett.com

By: */s/ David H. Haft*
David H. Haft Esq.
Florida Bar No. 68992
dhaft@darroweverett.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 4th day of March 2025, a true and correct copy of the foregoing was filed via the CM/ECF system, which will serve a true and correct copy of the same to all attorneys of record below.

Rachel E Kaufman
Kaufman PA
Plaintiff for Plaintiff
237 South Dixie Highway, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881
Email: rachel@kaufmanpa.com

Avi Robert Kaufman
Kaufman P.A.
Plaintiff for Plaintiff
237 South Dixie Highway, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881
Email: kaufman@kaufmanpa.com

*/s/ David H. Haft*
David H. Haft